(55 South. 706.)

No. 18,849.

NEW YORK PRESS CO., Limited, v. SALTER.

In re SALTER.

(May 22, 1911.)

(Syllabus by the Court.)

1. JUSTICES OF THE PEACE (§ 53*)—JURISDICTION—CONTEMPT.

A justice of the peace whose jurisdiction is, in general, confined within the limits of a particular ward of a parish has no authority to compel a person residing in another ward to appear and testify before him, for the purposes of a case pending in his court, or before a commissioner appointed by a court of another state, for the purposes of a case pending in such court, and cannot lawfully punish such person for contempt for refusing so to testify.

[Ed. Note.—For other cases, see Justices of the Peace, Dec. Dig. § 53.*]

2. DEPOSITIONS (§ 39*)—COMMISSION OF FOREIGN STATE—CERTIFICATION.

An instrument purporting to be a commission to take testimony, issued by a court of another state, is not entitled to recognition in a court of this state, unless certified in accordance with the Act of Congress of May 26, 1790, c. 11, 1 Stat. 122.

[Ed. Note.—For other cases, see Depositions, Dec. Dig. § 39.*]

3. DEPOSITIONS (§ 71*)—EXAMINATION—COMPELLING WITNESS TO ANSWER.

Although a third person, called as a witness, may be subjected to a very unpleasant examination for the purpose of eliciting facts which are material or relevant to a litigation in which he has no concern, a judge who is not in a position to determine whether such facts are relevant or not ought not to compel him to make disclosures concerning them, particularly where they appear to relate entirely to his private life and affairs.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. § 132; Dec. Dig. § 71.*]

Action by the New York Press Company, Limited, against Mrs. Bruce S. Salter. From an order sentencing defendant to imprisonment for contempt, she tries for certiorari, prohibition, and mandamus. Sentence for imprisonment set aside, and relatrix discharged.

John R. Davis, for relatrix. Weeks & Weeks, for respondent.

MONROE, J. From the petition, affidavit, exhibits, and return in this case, it appears that relatrix resides in New Iberia, in the Sixth ward of the parish of Iberia; that she was served with a summons, issued by the justice of the peace of the Eighth ward of that parish, to appear, instanter, before Charles A. Poirson, a notary public, in the town of Jeanerette, some 12 miles distant from New Iberia, and there give her testimony, in answer to 241 interrogatories, concerning her private life during a period of about 10 years, which terminated several years ago, which interrogatories purport to be propounded under a commission issued from the Supreme Court of New York state and county, on behalf of the defendant in a suit there pending entitled "Oscar Hammerstein v. New York Press Co., Ltd."; that she appeared before the notary, but declined to answer the interrogatories; that counsel representing the defendant in the case mentioned caused her to be summoned before the justice of the peace at Jeanerette, to answer a rule for contempt, and that, after hearing, the justice made the rule absolute, and sentenced her to imprisonment in the parish jail; whereupon she made the application to this court which we are now considering. The reasons which, in her sworn petition, she alleges that she gave, and which she now gives, for refusing to answer before the notary are, in substance: (1) That, being domiciled in the Sixth ward of the parish, the justice of the peace of the Eighth ward is without jurisdiction to compel her to appear

before a notary public in that ward; (2) that the instrument, purporting to be a commission from the Supreme Court of New York, is not authenticated as such, and is not therefore entitled to recognition in the courts of this state; (3) that said commission is not addressed to a notary public, commissioner, clerk of court, or other person authorized to take depositions, but is addressed to Charles A. Poirson; (4) that it does not show that the testimony sought to be elicited is relevant or material to any issue in the case said to be pending in said Supreme Court of New York, and that the interrogatories relate to her private life, and are insulting and calculated to injure her good name and reputation.

She further alleges that the same objections were urged before the justice of the peace by way of return to the rule for contempt, and that she further objected, on the hearing of said rule, that the justice of the peace is authorized to punish for contempt only witnesses summoned to appear before him, and is not authorized so to punish witnesses summoned to appear before a notary public.

The justice of the peace, as respondent herein, says that the defense set up by relatrix was a general denial, and the counsel by whom he is represented say, in their brief:

"We submit that relator, by appearing personally and by attorney, before respondent, making no objection to the trial of said cause, filing no exception to the jurisdiction, nor other exception to put at issue the regularity or legality of the proceedings, waived any objection to the jurisdiction of the court, as well as any alleged irregularities in procedure. * * * The only question which was presented to respondent to try, under the general denial, was as to whether or not relator had appeared before the notary in obedience to the summons, and then had refused to be sworn and to answer the interrogatories. This fact was established by proper evidence, and judgment was rendered accordingly."

As we understand the position of the respondent and his learned counsel, they do not deny that relatrix made, before the notary, and urged before the respondent, the objections which are recited in her petition, but they say that she filed no formal exception to jurisdiction. On the other hand, it does not appear that she filed any formal general denial, and, if it be true, as we take it to be, that she urged the objections mentioned, by way of defense to the rule, we are at a loss to see why a mere general denial should be attributed to her. At all events, as the pleadings before the justice of the peace were not required to be, and, so far as relatrix is concerned, were not, in writing, and as there may have been a misunderstanding of her position, we think that she should be heard upon the case as here presented.

The Constitution (article 126) provides that:

"In each parish, the parish of Orleans excepted, there shall be as many justices of the peace as may be provided by law."

[1] The question of the territorial jurisdiction of such justices is left entirely, and that of the jurisdiction ratione personæ, to some extent, to the General Assembly.

The Code of Practice (article 1070) provides that:

"Justices of the peace shall not hold, exercise, or entertain jurisdiction in any civil matter where the defendant does not reside within the limits of his ward. * * *"

From which it follows that the respondent, justice of the peace of the Eighth ward of the parish of Iberia, cannot exercise jurisdiction in any "civil matter" in which the relatrix, who resides in the Sixth ward, is a party defendant, unless by her voluntary appearance.

It is said, however, that:

"While C. P. art. 1070 allows them [the justices] to cite before them, as defendants, only persons residing within the limits of the ward, they have the power to issue subpœnas to witnesses in any part of the parish. * * *"

But the learned counsel for respondent have overlooked, or have confused with article 1070, article 1069, C. P., which reads:

"In civil cases within their competence, justices of the peace can only cite before them such persons as are domiciliated, or residing, within the limits of their jurisdiction, or strangers who may chance to be there. In this case, the term strangers applies to such as have no domicile or fixed place of residence in the state; provided, that courts may issue their commission to any magistrate of the parish wherein a witness shall reside, to examine such witness and receive his disposition."

Construing the two articles thus quoted together, it is plain that the one (article 1070) prohibits the justices of the peace from exercising jurisdiction in any civil matter where the defendant does not reside within the limits of his ward, and that the other (article 1069) denies to the justices of the peace the power to cite before them, even in cases in which, quoad the litigants, they may have jurisdiction, any other persons than those who "are domiciliated or residing within the limits of their jurisdiction, or strangers who may chance to be there;" and that such denial applies to witnesses is made evident by the proviso with which the article concludes:

"That courts may issue their commissions to any magistrate of the parish wherein the witness may reside, to examine such witness and receive his disposition."

In other words, the same rule is applied to justices of the peace as is applied to the district courts by C. P. art. 425, which reads:

"If the witness, whom either the plaintiff or the defendant wishes to be heard, reside out of the parish in which the suit is pending, such plaintiff or defendant shall be entitled to obtain from the court a commission directed to some judge, or justice of the peace *where such witness resides*, or to any person authorized by law to administer oaths, to take his despositions." (Italics by the court.)

Hence, if, in a case pending before a justice, the plaintiff or the defendant desires to obtain the testimony of a witness who resides outside of the ward within which the jurisdiction of such justice is confined, he must obtain it by means of a commission addressed to some person authorized to administer oaths, "*of the place where such witness resides*."

In the instant case, there is no suit pending before the respondent in which either plaintiff or defendant desires to obtain the testimony of the relatrix; there is merely what purports to be a commission, issued by a court of the state of New York, directing one Charles A. Poirson to take the deposition of the relatrix, for the purposes of a case there pending, and any authority which the respondent may have in the premises is derived from section 604 of the Revised Statutes, which reads:

"Whenever it shall be necessary to take the deposition of witnesses in this state, under commission from any other state or territory, to be used in evidence in suits depending therein, it shall be lawful for any justice of the peace within this state, on the application to that effect, made by the commissioner of such state or territory, to use, if necessary, the same compulsory process to cause witnesses to appear and depose as in cases arising under the jurisdiction of any of the courts of this state."

But, as a justice of the peace, whose jurisdiction is, in general, limited to one ward of a parish cannot compel a witness residing in another ward to appear and testify in the ward to which his jurisdiction is thus limited, in cases arising under the jurisdiction of any of the courts of this state, neither can he do so for the purposes of cases depending in the courts of other states or territories.

The articles of the Code of Practice and the section of the Revised Statutes upon which respondent relies (C. P. arts. 1119, 1121, 1140, 1152, 1153, 1155; 1160; R. S. § 633) provide, in effect, that, in cases where no express provision is made, justices of the peace shall possess such powers as are necessary to the exercise of the jurisdiction conferred on them; that, where a debtor resides out of the state; is about, permanently, to depart from the state; or is here only transi-

ently, and has no domicile; or conceals himself, so that process cannot be served on him —a writ of attachment may run from a justice of the peace court to any part of the parish; and that a writ of fieri facias from such court may be executed in any part of the parish; and that constables shall have authority to act throughout the extent of their respective parishes.

So, also, writs of attachment and execution may run from the district courts, respectively, to any part of the state, but it does not follow that the district court for the parish of Cameron can compel the attendance of a witness residing in the parish of East Carroll; nor does it follow that, because constables are empowered to act throughout their respective parishes, in so acting they are to execute orders which justices of the peace are unauthorized to give; the facts being that other sections of the Revised Statutes than those to which we have been referred provide that, under certain circumstances, constables shall discharge the duties of sheriffs and coroners (R. S. §§ 619, 641), and that, in this particular case, the constable refused to serve the subpœna on the relatrix, and that it was served by a deputy sheriff. We, therefore, conclude that the respondent, justice of the peace, was without authority to compel the relatrix to appear and testify beyond the limits of the ward in which she resides, and hence was without authority to punish her for refusing so to do. Beyond that, the instrument purporting to be a commission, issued from the Supreme Court of New York county, is not authenticated according to the Act of Congress of May 26, 1790, c. 11, 1 Stat. 122, providing the manner in which the records and judicial proceedings of the courts of one state shall be attested, in order to entitle them to recognition in the courts of another state, and, whilst it is true that the respondent could take judicial cognizance of the fact

that Charles A. Poirson is a notary public of the parish of Iberia, and that, as such, he is empowered to administer oaths, he (respondent) had nothing before him to authorize the assumption that he (Poirson) had been appointed by the New York court a commissioner to receive depositions in a case pending before that tribunal, and hence was not in a position to apply the compulsion authorized by R. S. § 604. [3] Again, neither the alleged commission nor the interrogatories attached to it inform us, or could have informed the respondent, as to the issues presented in the case of Oscar Hammerstein v. New York Press Company, and, although a third person, called as a witness, may be subjected to a very unpleasant examination, for the purpose of eliciting facts which are material or relevant to a litigation in which he has no concern, a judge who is not in a position to determine whether such facts are relevant or not ought not to compel him to make disclosures concerning them, particularly where, as here, they appear to relate entirely to his private life and affairs.

Cyc. vol. 13, p. 924 et seq.; Elliott on Evidence, vol. 2, § 1006 et seq.

For the reasons thus assigned it is ordered, adjudged, and decreed that the sentence for contempt herein complained of be annulled and set aside, and the relatrix discharged.